UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| KIMBERLY A. DADY, | Case No. CV 18-03432-AS |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| NANCY A. BERRYHILL,<br>Acting Commissioner of the<br>Social Security Administration, | |
| Defendant. | |

**PROCEEDINGS**

On April 24, 2018, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 15-16). On September 5, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 19-20). On November 26, 2018, the parties filed a Joint Stipulation ("Joint Stip.") setting

forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 22).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On August 5, 2015, Plaintiff, formerly employed as a regional facilities manager for a property management company (see AR 31-33, 156-57), filed an application for Disability Insurance Benefits, claiming an inability to work since November 14, 2014 based on alleged physical and mental impairments. (See AR 16, 140-43). On October 11, 2017, the Administrative Law Judge ("ALJ"), Lawrence D. Wheeler, heard testimony from Plaintiff (who was represented by counsel) and vocational expert June Hagen. (See AR 29-46). On December 4, 2017, the ALJ issued a decision denying Plaintiff's application. (See AR 16-22). The ALJ found, at step two of the five-step sequential evaluation process, that Plaintiff's medically determinable impairments -- "history of trigeminal neuralgia; migraine; irritable bowel syndrome; pancreatitis due to alcoholism; and mild depression" (AR 18)[1] -- did not significantly limit Plaintiff's "ability to perform basic work-related activities for 12 consecutive months[.]" (AR 18-22). Accordingly, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments that was severe, and thus was not disabled at any time from the alleged

---

[1] The ALJ found Plaintiff's medically determinable mental impairment to be non-severe because it caused no more than "mild" limitations in any of the functional areas. (AR 22).

disability onset date through the date of the ALJ's decision. (AR 22).

On February 28, 2018, the Appeals Council denied review. (<u>See</u> AR 1-6). Plaintiff now seeks judicial review of the ALJ's decision which stands as the final decision of the Commissioner. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. <u>See</u> <u>Brewes v. Comm'r</u>, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred in (1) failing to properly reject the opinion of Plaintiff's treating physician who diagnosed Plaintiff with Chronic Pain Syndrome and failing to find that

3

Plaintiff's Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome ("RSDS/CRPS"), another form of chronic pain syndrome, was a severe impairment; (2) failing to properly evaluate Plaintiff's subjective complaints and credibility; and (3) "finding that Plaintiff retain[ed] the residual functional capacity to perform sedentary work and could perform her past relevant work as an office manager." (See Joint Stip. at 2-5, 11-14, 23-24, 26).

## DISCUSSION

After consideration of the record as a whole, the Court finds that the ALJ's step two determination is supported by substantial evidence in the record, in accord with the Commissioner's regulations, and free from legal error.[2] Accordingly, it is not necessary to address Plaintiff's second and third claims of error. See 20 C.F.R. § 404.1520(c)("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.").

## DISCUSSION

Plaintiff contends that the ALJ failed to properly reject Plaintiff's treating physician's opinion that Plaintiff has Chronic Pain

---

[2] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

4

Syndrome, and that the ALJ failed to find that Plaintiff's RSDS/CRPS was a severe impairment. (See Joint Stip. at 4-8, 12). Defendant contends that the ALJ properly found that Plaintiff did not suffer from a severe impairment or combination of impairments. (See Joint Stip. at 8-11).[3]

A. Applicable Law

"The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)(citing 42 U.S.C. § 423 (d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. at § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in

---

[3] Contrary to Defendant's assertion (see Joint Stip. at 4), a treating physician's diagnosis is a medical opinion. See 20 C.F.R. § 404.1527(a)(1)("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his or her ability to do basic work activities. See 20 C.F.R. § 404.1520(a)(4)(ii); see also Webb, supra.

The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b); Webb v. Barnhart, supra. A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include the abilities to perform physical functions, to see, hear and speak, to understand, carry out, and remember simple instructions, to use judgement, to respond appropriately to supervision, co-workers and usual work situations, and to deal with changes in a routine work setting. 20 C.F.R. § 404.1522(b). An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, supra; see also Social Security Ruling ("SSR") 85-28; Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987). "An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (quoting SSR 85-28). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element that Plaintiff must prove in order to establish disability within the meaning of the Social Security Act. Bowen, 482 U.S. at 146. "[T]he step-two inquiry is a de minimis screening device to dispose of

groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

If the ALJ concludes that a claimant lacks a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement," the ALJ must find the claimant not to be disabled. 20 C.F.R. § 404.1520(a)(4)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005)(ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

If the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling [her] to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must then determine the claimant's residual functional capacity ("RFC"), that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all her impairments. 20 C.F.R. § 404.1520(e). Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether - taking into account the claimant's age, education, work experience and RFC - there is any other work that the claimant can do and if so, whether there are a significant number

of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Tackett, supra.

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Lester, 81 F.3d at 830. If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester, supra.

B. Plaintiff's Testimony

Plaintiff testified that she last worked as a regional facilities manager for an asset management company, primarily doing office work, conference calls and staff meetings, and spent 40 to 50 percent of her time traveling to visit properties and train new staff. (AR 31). She stopped working in 2014 due to pain in her left fascia trigeminal nerve.

(AR 34). She has taken various medications for the pain and she is unable to work due to the side effects of those medications. (AR 34-35). Plaintiff stated that she was unable to work due to nausea and vomiting which "had been a problem for three or four years, perhaps even five, and slowly increased over time," reaching the point where it was interfering with her work. (AR 39). She still experiences episodes of vomiting ranging from no weekly episodes to once or twice a week, and up to five or six times a week. Id. Her typical day starts at 6:30 a.m.; she makes breakfast for her 17-year-old daughter, returns to bed and gets up to retrieve the mail which she puts on the sofa table before returning to bed. (AR 36-37). She spends about seven hours a day -- between the hours of 9:00 a.m. and 5:00 p.m. -- in bed. (AR 40). She is able to text on her phone. (AR 37). Her daughter does most of the grocery shopping and her own laundry and a cleaning lady comes in twice a month to clean the house. Id. Two years ago, she traveled by car to Las Vegas to watch her daughter compete in a softball tournament. (AR 37-38). Her daughter drove the car to Las Vegas, and while there, Plaintiff remained in her motel room when she was not attending the softball games. (AR 38-39).

Plaintiff testified that her friend, Daniel Araya, who had completed a third party form indicating that he was actively helping her, no longer lives close by to assist her. (AR 38).

C. Dr. Diehl

Paul Diehl, M.D., a physician at West Hills Hospital and Medical Center, treated Plaintiff from September 20, 2011 to September 12, 2017.

(See AR 246-360, 434-502, 507-85, 617-44, 836-951, 953-68). Dr. Diehl's progress notes reflect treatment for abdominal pain from alcoholic-related acute pancreatitis, trigeminal neuralgia, tachycardia, hyperlipidemia, irritable bowel syndrome and various mild and/or transitory ailments. As the ALJ noted, Plaintiff's office visits reflected normal physical examinations, and many office visits were for medication and refill purposes only. (AR 19).

D. Consultative Examination

In November 2015, Plaintiff was examined by Michael Wallack, M.D., for a consultative internal medicine evaluation. (See AR 371-80). Plaintiff complained of left facial pain and tachycardia. (AR 371). Based on his physical examination, testing and observations, Dr. Wallack found that Plaintiff's left facial pain, presumably trigeminal neuralgia, was a chronic condition that "seems to be controlled with her current medical regimen" and that Plaintiff's intermittent tachycardia was adequately treated with medication. (AR 375). Finding no fixed neurological deficits and no sign of cardiac insufficiency, Dr. Wallack assessed no functional limitations on Plaintiff's abilities to stand, walk, sit, lift and carry, and no postural, environmental, visual or communicative limitations. (AR 375-76).

E. Analysis

As set forth below, the ALJ's determination that Plaintiff does not suffer from a severe impairment or combination of impairments that is severe is supported by substantial evidence in the record. After

summarizing the records of Plaintiff's treatment at West Hills Hospital and Medical Center during the period September 2011 to September 2017 (see AR 19-20), the ALJ addressed Dr. Diehl's specific statements about Chronic Pain Syndrome, as follows: "In April and May 2016, Dr. Diehl indicated the claimant was again experiencing nausea and vomiting with weight loss, chronic pain syndrome, and trigeminal neuralgia (Exhibit 14F, pp. 114-16). However, there was again no clear diagnosis or etiology." (AR 20).

"A chronic pain syndrome is the combination of chronic pain [pain of an injury or illness lasting longer than six months] and the secondary complications that are making the original pain worse." See www.instituteforchronicpain.org/understanding-chronic-pain/what-is-chronic-pain/chronic-pain-syndrome; see also Lester, 81 F.3d at 829 (for Chronic Pain Syndrome, "[p]ain merges into and becomes a part of the mental and psychological responses that produce the functional impairments"). Here, the ALJ properly found that Dr. Diehl *did not clearly diagnose* Plaintiff with Chronic Pain Syndrome and that the medical record did not support such a diagnosis. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician including the treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); see also 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); 20 C.F.R. § 404.1527(d)(4) ("Generally, the more

consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

As the ALJ noted, Dr. Diehl's Progress Notes dated April 12, 2016 and May 29, 2016 referenced Plaintiff's nausea and vomiting with, <u>inter alia</u>, chronic pain syndrome (<u>see</u> AR 838-39 [on April 11, 2016, Plaintiff complained of intractable nausea, vomiting and pain, and the admitting diagnoses were "[i]ntractable nausea and vomiting with chronic pain syndrome"], 836-37 [on May 28, 2016, Plaintiff complained of nausea and vomiting, and the admitting diagnoses were "[i]ntractable nausea and vomiting, associated weight loss, chronic pain syndrome with associated trigeminal neuralgia with recent falls, weight loss"]). These notations, along with the other notations in the record about Chronic Pain Syndrome, both prior to and after the alleged November 14, 2014 disability onset date (<u>see</u> AR 333-34 [on January 8, 2014, notation that Plaintiff had a history of chronic pain syndrome], 306-07 [on September 25, 2014, the admitting diagnoses included "history of chronic pain syndrome secondary to trigeminal neuralgia"] 255-56 [on August 1, 2015, the admitting diagnoses included chronic pain syndrome]), reflect Plaintiff's complaints, rather than an actual diagnosis. In fact, the majority of medical records prior to and after Dr. Diehl's April 12, 2016 and May 29, 2016 Progress Notes do not mention chronic pain syndrome. Since, contrary to Plaintiff's assertion, Dr. Diehl did not diagnose Plaintiff with Chronic Pain Syndrome, the ALJ did not err in rejecting Dr. Diehl's opinion.

The ALJ noted that neither Dr. Diehl, nor any other medical providers, opined that Chronic Pain Syndrome limited Plaintiff's

12

abilities to perform basic work activities (AR 21), and Plaintiff has failed to cite to any evidence in the record to support otherwise.[4] Plaintiff has not demonstrated that her Chronic Pain Syndrome limited her abilities to perform light work, which the ALJ alternatively found Plaintiff capable of doing (see AR 22). See Tacket, supra ("The burden of proof is on the claimant as to steps one to four.").

Plaintiff's contention that her RSDS/CRPS was a severe impairment (see Joint Stip. at 4-5, 12) is also without merit. "RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It also can result from diseases, surgery, or injury affecting other parts of the body. . . . The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." SSR 03-2p; see also http://www.ninds.nih.gov/Disoders/All-Disorders/Complex-Regional-Pain-Syndrome-Information-Page (CRPS "is a condition marked by severe, prolonged chronic pain (lasting more than six months) that may be constant. . . . Common symptoms include dramatic changes in the color and temperature of the skin over the affected limb or body part,

---

[4] The results of physical examinations beginning approximately six months prior to the alleged November 14, 2014 disability onset date do not reflect the levels of pain that Plaintiff claims to have experienced, and also do not support a diagnosis of Chronic Pain Syndrome. (See AR 234-37, 255-56, 306-09, 515-85, 836-39, 841-73, 836-951, 953-68).

13

accompanied by intense burning pain, increased sensitivity in the affected area, skin sensitivity, abnormal sweating, and abnormal movement in the affected limb. In most instances the condition is triggered by a clear history of trauma or injury."); http://www.webmd.com/brain/what-is-reflex-sympathetic-dystrophy-syndrome (RSDS, "an older term used to describe one form of CRPS," "is caused by injury to tissue with no related nerve damage."). A diagnosis of RSDS/CRPS is warranted if there are "complaints of persistent, intense pain" resulting in impaired mobility in the affected region which are associated with "[s]welling; [a]utonomic instability--seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh); [a]bnormal hair or nail growth (growth can be either too slow or too fast)"; [o]steoporosis; or [i]nvoluntary movements of the affected region of the initial injury." SSR 03-2p.

Plaintiff has failed to meet her burden of establishing that the ALJ erred in failing to find that RSDS/CRPS was a severe impairment. Indeed, Plaintiff's attempt to support her claim by relying on additional evidence in the record (see Joint Stip. at 5, citing AR 960 [on August 14, 2017, Dr. Diehl made an assessment of Chronic Fatigue Syndrome], 234 [in a July 21, 2015 report following a neurological examination, George Chow, M.D. at San Fernando Valley Neurological Medical Group stated that the examination was to review Plaintiff's problems with "[c]ervico-occipital neuralgia, [s]kin-sensation disturbance, [and] [c]hronic pain in face" and assessed that Plaintiff had a "[l]ong-standing history of severe trigeminal deafferentation pain syndrome"]) is unpersuasive. Contrary to Plaintiff's assertion, these

notations do not support a diagnosis of Chronic Pain Syndrome or RSDS/CRPS.

The ALJ properly concluded that, despite Plaintiff's assertions of functional limitations caused by Chronic Pain Syndrome or RSDS/SRPS, the objective medical evidence did not support such a finding.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 13, 2019

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE